Harry H.N. TUNG, Plaintiff-Appellant,

v.

AMERICAN UNIVERSITY OF THE
CARIBBEAN, Defendant-Appellee,

Paul S. Tien, Defendant,

and

Yife Tien, Defendant-Appellee.

No. 83–1350.

Court of Appeals of Iowa.

June 26, 1984.

John D. Cruise of Barker, Cruise & Kennedy, Iowa City, for plaintiff-appellant.

Bruce C. Walker of Phelan, Tucker, Boyle & Mullen, Iowa City, for defendants-appellees.

Considered by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Plaintiff, Harry Tung, appeals from the granting of a special appearance for defendants American University and Yife Tien in this action for breach of an employment contract and conversion. The question here is whether the nonresident defendants had sufficient contacts with Iowa to permit our courts to acquire personal jurisdiction over them. The trial court sustained defendants' special appearance after finding that "insufficient contacts exist" to subject the defendants to jurisdiction under

Iowa Rule of Civil Procedure 56.2 and the governing due process stricture. We affirm.

The principles controlling this case were succinctly stated in *Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.*, 301 N.W.2d 709, 711 (Iowa 1981), as follows:

Jurisdiction under rule 56.2 is coextensive with what is permitted by the due process clause of U.S. Const. amend. XIV. *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). Therefore the only relevant issue is whether in this case personal jurisdiction over the nonresident defendant is consistent with due process. Controlling principles are delineated in *Larsen* and need not be fully repeated here. *See id.* at 787–88.

Because due process is infringed unless the defendant has had sufficient minimum contacts with Iowa, we must determine whether the contacts were sufficient in the present facts. In doing so, we consider:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source of and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Id.* at 788. The first three factors are most important.

■ The trial court findings of fact have the force of a jury verdict. *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 185 (Iowa 1970). Those findings were as follows:

The facts relating to the Special Appearance are not in significant dispute. The Plaintiff had submitted his name to the Anatomists Placement Service at Loyola University which contain names of persons seeking employment in the field of anatomy. The Defendant University was seeking a person with Plaintiff's particular skills, and on May 1, 1982, sent a letter to the Plaintiff in Iowa explaining the employment possibilities with the Defendant University. The facts further established that three telephone calls occurred between the Plaintiff and the Defendant between May 19, 1982, and June 16, 1982. A meeting was held in Miami, Florida, between the parties negotiating the terms of a contract on June 3, 1982. The Defendant mailed a contract to the Plaintiff from the American University of the Caribbean on or about June 16 of 1982. The contract was signed to be effective for one year and returned to the University.

The uncontested Affidavit of the Defendant asserts that the Defendant University is not licensed in any state in the United States including Iowa, that the Defendant has never had any agents, employees, officer facilities in the State of Iowa, owns no property in the State of Iowa, and makes no purchases in the State of Iowa, has held no seminars, no workshops or other meetings in Iowa, and does not transact any business in the State of Iowa. Further, the University did not send a representative to Iowa during the negotiations for the contract. The Petition asserts that the Plaintiff commenced his employment with the Defendant on July 7, 1982, and that in October and November of 1982, the facts arose leading up to the alleged breach of contract by the Defendant.

■ In addition, Tung asserts on appeal that his affidavit undisputedly shows that defendant American University mailed Tung's termination check from Montserrat to Iowa City and that we should also consider that contact in determining whether the trial court correctly concluded there was insufficient minimum contacts to assert jurisdiction. Tung alleged in the "preamble" of his petition that American University mailed a check in the amount of $383.53 to him in Iowa City. This fact was not controverted by the defendants in their affidavits. We therefore consider this jurisdictional fact in addition to those found by the trial court. *See DeCook v. Environmental Security Corporation, Inc.*, 258 N.W.2d 721, 726 (Iowa 1977). However, we do not believe the existence of this fact, in addition to those as found by the

trial court, renders the judgment erroneous.

■ Due process considerations for assertion of personal jurisdiction over nonresidents require minimum contact with the forum state by a defendant sufficient to satisfy traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Unilateral acts by plaintiff alone will not suffice to bring a nonresident defendant within the personal jurisdiction of the forum state. *Hanson v. Denckla*, 357 U.S. 235, 250–54, 78 S.Ct. 1228, 1238–40, 2 L.Ed.2d 1283, 1295–98 (1958). In determining whether the above facts are sufficient to allow Iowa courts to assert jurisdiction over these defendants, we are guided by prior Iowa cases which also arose from contractual relationships. *See Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.*, 301 N.W.2d at 713, and cases cited therein.

There were three telephone calls made during the negotiation phase from Tien in Florida. There were also two letters sent to Iowa by Tien; an initial letter explaining the employment position available and a letter containing the offer of employment. The initial letter was in response to plaintiff's listing of his name with the Anatomists Placement Service in Illinois. The offer of employment was made after the plaintiff traveled to Florida where the parties negotiated the terms and salary of a possible employment contract. Finally, the defendant American University mailed the plaintiff's termination check to Iowa when plaintiff returned to Iowa City following the resignation of his teaching position in the British West Indies.

■ These contacts were initiated in response to plaintiff's listing his availability for teaching in what appears to be a "national registry" for his profession. Plaintiffs asserts on appeal that the defendants' position is analogous to that of a nonresident purchaser who aggressively seeks a purchase from a resident seller and not that of one who merely responds to solicitation by the resident seller. *See Al-Jon,*

*Inc.*, 301 N.W.2d at 714. As such, plaintiff argues that the defendants initiated the contacts with Iowa and purposely availed themselves of the privilege of conducting activities in Iowa. We disagree.

The passive-active purchaser distinction recognized in *Al-Jon* is normally used in analyzing business contacts and may not be applicable to an employer/employee situation. In any case, the facts do not reveal that the defendants actively solicitated the plaintiff until after the plaintiff submitted his resume and a "Professional Summary." The defendants received the plaintiff's name from a form published by the American Association of Anatomists Placement Service containing names of persons seeking employment in the field of anatomy. Defendants initial letter to the plaintiff briefly describing the job and the defendant American University demonstrates that the defendants position is more analogous to that of one responding to a solicitation. *See Al-Jon, Inc.*, 301 N.W.2d at 714.

■ Plaintiff also asserts that his signing of the contract in Iowa establishes sufficient contact to justify Iowa's assertion of jurisdiction. Merely entering into a contract with a forum resident, however, does not provide the requisite contacts between a defendant and the forum state. *See Iowa Electric Light and Power Co. v. Atlas Corporation*, 603 F.2d 1301, 1303 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). The contact was negotiated by the parties in Florida and signed by the defendant American University's president in Montserrat, British West Indies. The contract was to be fully performed in the British West Indies and the alleged breach of the contract and conversion occurred in the British West Indies.

■ Plaintiff also asserts that mailing the three letters to Iowa and making the three telephone calls to Iowa provides the necessary contacts. These factors alone, however, are not sufficient "minimum contacts" between the defendants and the State of Iowa so that the assertion of personal jurisdiction would be consistent with

traditional notions of fair play and substantial justice. *See Scullin Steel Co. v. National Railway Utilization Corporation,* 676 F.2d 309, 313 (8th Cir.1982). At no time did the defendants send a representative to Iowa, maintain offices in Iowa, or conduct business in Iowa.

It is readily apparent that an Iowa forum would be more convenient to the plaintiff. However, an Iowa forum would be inconvenient for the defendants who conduct no business in the United States beyond maintaining an office in Florida to facilitate communication between the United States and their British West Indies campus. Moreover, Iowa has only a minimal interest in this litigation. The contract was negotiated by an Iowa resident in Florida to be wholly performed outside the United States. The plaintiff moved from Iowa and only returned to Iowa after the breach of that contract. This is not a case where an Iowa resident enters into a contract with a nonresident and remains an Iowa resident throughout the negotiation, signing, performance and breach of a contract. *See Berkley International Co., Ltd. v. DeVine,* 289 N.W.2d 600, 602 (Iowa 1980) (plaintiff was an Iowa corporation with its principal place of business in Iowa).

We do not believe the minimum contacts requirements for judicial jurisdiction have been met in this case and hold that the maintenance of the suit in Iowa offends traditional notions of fair play and justice. It would be unreasonable to subject these defendants to the jurisdiction of the Iowa courts.

AFFIRMED.